UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                            Case No. 17-30955-WRS
                                                                 Chapter 13
STACEY H. BRODGEN,

    Debtor

STACEY H. BRODGEN,

    Plaintiff                                 Adv. Pro. No. 17-3029-WRS

  v.

HOLMES MOTORS INC.,

    Defendant

**MEMORANDUM DECISION**

    This Adversary Proceeding is before the Court on the Motion for Summary Judgment filed by Defendant Creditor Holmes Motors, Inc. (Doc. 41). The motion is fully briefed. The issue considered is whether Defendant is entitled to a judgment as a matter of law under Fed. R. Bankr. P. 7056. For the reasons set forth below, the motion is DENIED.

**I. FACTS**

    Plaintiff Stacey H. Brodgen (Debtor) filed a petition in bankruptcy pursuant to Chapter 13 in this Court on March 31, 2017, and filed a Chapter 13 Plan the same day. (17-30955, Docs. 1, 2). The Plan treats the claim of Creditor as secured by a 2007 Chevrolet Tahoe.[1] It provides for Holmes as the holder of a claim having a "specified monthly payment" of $502.00 to be paid over the life of the Plan and an "adequate protection payment" of $185.00 per month to be paid

---

[1] Holmes Motors has not filed a Proof of Claim with the Court. The Debtor's Plan states that Holmes is owed $18,771.50, secured by a 2007 Chevrolet Tahoe.

until confirmation of the Plan. The Chevrolet Tahoe is listed as an asset of the Debtor on Schedule B and the indebtedness owed to Creditor is listed as a secured indebtedness on Schedule D. (17-30955, Doc. 1). On April 6, 2017, the Court issued an "Income Withholding Order" that called for Brodgen's employer to take money out of her paycheck and pay it over to the Chapter 13 Trustee for the purpose of funding her Chapter 13 Plan, which includes the payment of Creditor's secured claim. (Case No. 17-30955, Doc. 13). Debtor amended her Chapter 13 Plan on April 19, 2017, (17-30955, Doc. 18) and again on June 16, 2017; however, the treatment of Creditor's claim was not changed (17-30955, Doc. 27). Creditor did not object to its treatment under Debtor's Chapter 13 Plan. The Court confirmed the Plan on June 23, 2017. (17-30955, Doc. 29).

Debtor testified in her deposition that she spoke on the telephone with representatives of Creditor a number of times.[2] After the Debtor filed bankruptcy, an employee of Creditor named Chris told Debtor that she could not file bankruptcy. (Doc. 41, Ex. 5, Part 1, p. 27).

> Q: This was back when you were first at the dealership or when you were talking to Chris on the phone?
>
> A: On the phone. On the phone.
>
> Q: After you had filed bankruptcy?
>
> A: Right. He told me you can't do that. And I'm like what do you mean, I can't do that. That's why I was like what.
>
> Q: Okay. And when you said that he said you can't do that, you understood that to be you can't file bankruptcy?

---

[2] Excerpts of Brodgen's deposition are attached at Exhibit 5 to Creditor's Motion for Summary Judgment. (Doc. 41).

> A: Right. And I told him I had done it.
>
> * * *
>
> Q: And did he tell you that you had to continue making your payments?
>
> A: I don't know if he said that, but – well, he had to have because they kept calling me asking me for payments. I'm like it's already coming out of my check.

(Brodgen Dep. pp. 29-30). Creditor knew of Debtor's bankruptcy filing, knew of its treatment under the Plan, and knew that the Plan was being funded by an income withholding order. Notwithstanding this knowledge, on April 12, 2017, representatives of Creditor went to Debtor's place of employment and proceeded to repossess her Chevy Tahoe. She told the representatives that she was in bankruptcy and that she made her payments as they had been taken from her paycheck. Under the compulsion of a threat of repossession, she drove to Creditor's place of business, where she thought she could straighten things out. Instead, she was told that she could not take her vehicle unless she paid $703, which she did under protest. To further aggravate the situation, Debtor was threatened with arrest if she attempted to move her vehicle without paying the sum demanded. (Brodgen Dep. pp. 31-42).

Creditor offers a copy of a "Motor Vehicle Lease Agreement – Closed End," signed May 11, 2016, in support of its claim that Debtor leased the vehicle and that the lease terminated prior to the bankruptcy filing. (Doc. 41, Ex. 1). Whether the underlying contract between Brodgen is in fact a lease or a security agreement is, at a minimum, a fact that, as of April 12, 2017, was in

-3-

Case 17-03029    Doc 50    Filed 03/30/18    Entered 03/30/18 09:04:26    Desc Main
Document    Page 3 of 12

dispute. It appears that this fact is no longer in dispute in light of this Court's Order of June 23, 2017, confirming the Brodgen's Chapter 13 Plan.[3] (17-30955, Doc. 29).

Creditor contends that the lease terminated prior to the date of Brodgen's bankruptcy filing—March 31, 2017. Yet, Creditor offers no evidence in support of this fact. It is undisputed that Debtor possessed the vehicle at the time she filed her petition in bankruptcy. In fact, except for the events taking place on April 12, 2017, which disturbed but did not divest her of possession, Debtor possessed the vehicle at all times relevant to these proceedings. It is further undisputed that Creditor did not send or deliver Debtor a document telling her that her rights under the lease had terminated. Indeed, for all of the conversations between Debtor and representatives of Creditor, both on the telephone and in person, it does not appear that any representative of Creditor ever stated that the lease had terminated.

Debtor offered a copy of a document entitled "A/R Customer Research Payments," which appears to be a business record of Creditor's. (Doc. 46, Ex. 4). That document indicates that Creditor sent numerous past due reminders to Debtor as late as July of 2017, contradicting Creditor's assertion that the lease terminated in March of 2017. Furthermore, it is undisputed that Creditor permitted Debtor to leave its premises with the Chevy Tahoe on April 12, 2017, after she paid the aforementioned $703, all of which contradicts any argument that Debtor's rights under the lease (or security agreement) had somehow terminated. Drawing all reasonable inferences in favor of the Debtor, the only conclusion to be drawn is that her rights under the contract had not been terminated.

---

[3] Creditor did not object to its claim being treated as secured under Debtor's Plan.

-4-

Case 17-03029   Doc 50   Filed 03/30/18   Entered 03/30/18 09:04:26   Desc Main
Document      Page 4 of 12

## II. LAW

### A. Jurisdiction

This Court has jurisdiction to hear this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b). The question of whether the Creditor violated the automatic stay is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (G). The remainder of the issues raised in the complaint are noncore. This is not a final order.

### B. Motion for Summary Judgment Standard

This Adversary Proceeding is before the Court on the Motion for Summary Judgment filed by Defendant Holmes Motors, Inc. (Doc. 41). Such motions are governed by Bankruptcy Rule 7056, which incorporates Rule 56, Fed. R. Civ. P. Motions for Summary Judgment may only be granted if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The evidence is viewed in the light most favorable to the non-moving party and all inferences must be drawn in the light most favorable to the non-moving party. *Mize v. Jefferson City Board of Ed.*, 93 F.3d 739, 743 (11th Cir. 1996). The initial burden of proving that there is no genuine issue as to any material fact is on the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### C. The Automatic Stay

### 1. General Considerations

Creditor makes two arguments in its brief. First, it contends that the Chevy Tahoe was not property of the estate because the vehicle lease terminated prior to date of the bankruptcy filing and, as a result, there was no violation of the automatic stay. (Doc. 41, pp. 5, 7-10). In the alternative, it argues that any violation of the automatic stay was not willful. (Doc. 41, pp. 10-11). The evidence submitted by the parties shows that, at a minimum, there are disputed material facts on both of these factual contentions.

On should first consider that the filing of a petition in bankruptcy:

> (a) . . . operates as a stay, applicable to all entities, of–
>
> * * *
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> * * *
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.
>
> * * *
>
> (k) . . . an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362. It is well established that a creditor who takes action to collect an indebtedness owed by a debtor may be held liable for damages. *Lansaw v. Zokaites (In re Lansaw)*, 853 F.3d

657, 667 (3rd Cir. 2017); *Lodge v. Kondaur Capital Corp.,* 750 F.3d 1263, 1268 (11th Cir. 2014); *Credit Nation Lending Services, LLC v. Nettles*, 489 B.R. 239, (N.D. Ala. 2013) (aff'g Bankruptcy Court's imposition of damages, punitive damages and attorney's fees for post-petition repossession of automobile); *In re White*, 410 B.R. 322 (Bankr. M.D. Fla. 2009) (imposing damages, punitive damages, and attorney's fees for repeated telephone calls to the debtor and debtor's relatives to collect a debt); *Smith v. Homes Today, Inc., (In re Smith)*, 296 B.R. 46 (Bankr. M.D. Ala. 2003) (imposing damages, punitive damages, and attorney's fees for repossession of a mobile home in violation of the automatic stay).

### 2. Creditor's argument that the Chevy Tahoe is not property of the estate is not supported by the evidence

Creditor argues in its brief that the Chevy Tahoe is not property of the estate because Debtor's rights under her lease were terminated prior to the date of the filing of the petition in bankruptcy and hence, they contend, there can be no violation of the automatic stay. Creditor's argument is contrary to the evidence in the Court's record. Debtor filed a Chapter 13 Plan which treats Creditor's interest as a secured claim, which is dealt with under the Plan by paying its value, with interest, over the life of the Plan. (17-30955, Docs. 2, 18, 27); *see* 11 U.S.C. § 1325(a)(5). In other words, the Debtor's Plan takes the position that her interest had not terminated, and that her interest in the Chevy Tahoe was property of the estate. Creditor did not object to its treatment under the Plan.[4] On June 23, 2017, this Court confirmed Debtor's Plan.

---

[4] Creditor argues in its brief that its lease with Debtor was a "true lease" and not a disguised security agreement. Had it timely objected, it may well have prevailed on that point, but it did not. Rather, it is now bound by the Debtor's confirmed Chapter 13 Plan–which treats the interest of Creditor as a secured claim and not a leasehold interest.

(17-30955, Doc. 29). The Creditor failed to establish, as a matter of undisputed fact, that Debtor's leasehold interest in the Chevy Tahoe terminated; rather it is established, to the contrary, that Creditor has a secured claim which is provided for under the Plan. § 1327 (provisions of plan bind debtor and creditor). *Hope v. Acorn Fin.* Inc., 731 F.3d 1189, 1196 (11th Cir. 2013); In *re Zayed*, 340 B.R. 108, 110–11 (Bankr. M.D. Fla. 2006); *In re Mitchell*, 281 B.R. 90, 93–94 (Bankr. S.D. Ala. 2001); *Green Tree Fin. Corp., v. Garrett (In re Garrett)*, 185 B.R. 620, 622 (Bankr. N.D. Ala. 1995). It is established, by way of a confirmed Chapter 13 Plan that the Chevy Tahoe is property of the estate, contrary to the argument made by Creditor.

Creditor's argument, that the lease terminated, is further rejected, because it offers no evidence that the lease was, in fact, terminated. By Creditor's own admission, Debtor was only $200 behind on her obligation to Holmes at the time her vehicle was repossessed.[5] (Doc. 41, p. 3, n. 1). There is nothing in any of the evidentiary submissions that shows that Creditor had taken any action to terminate the lease. When they repossessed the vehicle, on April 12, 2017, they released it upon receiving payment of $703. Thus, the lease had not in fact been terminated on April 12, 2017–unless Creditor takes the position that they let Debtor drive off its property, with its car, out of the goodness of its heart! That is not plausible. Rather, the fact that Debtor drove off with her car, after paying $703, on April 12, 2017, it was well established that the lease–if one wants to call it that–was still in effect. To be sure, the document under which Debtor claims rights to the car is denominated a lease. (Doc. 41, Ex. 1). Whether it was actually a lease or a disguised security interest was an issue which was then in dispute. However, when

---

[5] If Holmes was only $200 behind on her contract payment at the time of repossession, the record is unclear as to why she had to pay $703 to get her car back.

this Court confirmed the Chapter 13 Plan, on June 23, 2017, that issue was resolved. (17-30955, Doc. 29). After June 23, 2017, Creditor holds a claim, secured by an interest in the 2007 Chevy Tahoe, that was property of the estate.

Creditor argues that neither its lease nor Alabama law require that it give Brodgen formal, written notice that it was terminating the lease. *See*, Ala. Code § 7-2A-502. Even if that were so, it does not excuse Creditor from carrying its burden, under Rule 56, Fed. R. Civ. P., that it must establish the facts in support of its motion. As it has taken the position that the lease terminated, it must offer evidence that establishes this fact. Fed. R. Civ. P. 56; *Celotex Corp., v. Catrett*, 477 U.S. 317, 322 (1986). While notice may not be required under Alabama law, if Creditor had given Debtor notice that she was in default or that it was terminating her rights under the lease, then it would have some favorable facts supporting its position that the lease in question had terminated. Nevertheless, Creditor failed to offer evidence establishing undisputed facts that support its contention that it terminated Debtor's rights under the lease.

The parties filed a number of documentary exhibits in support of their respective positions on the pending Motion for Summary Judgment. Having examined the documentary record, the Court is unable to find any evidence suggesting that the lease had been terminated. Moreover, there is nothing in Debtor's deposition testimony which suggests that she was ever told the lease had been terminated. Creditor's records document several dozen demands for payment—all which suggest they considered the lease in effect, albeit in default. The fact that Debtor drove off Creditor's lot with the Chevy Tahoe after paying $703 establishes that both parties considered the lease, or the contract if one prefers that term, in effect. Creditor's argument, that the lease had terminated, is without merit because it is contrary to the Court's

order of confirmation and because there is no evidence in the record showing that the lease had been terminated.

### 3. Creditor violated the automatic stay every time it demanded payment after the bankruptcy filing even if its actions did not affect property of the estate.

Even if Creditor is correct on its point about the lease being terminated prior to the Debtor filing bankruptcy, the facts here establish multiple violations of the automatic stay. Creditor violated 11 U.S.C. § 362(a)(6) as it committed any number of acts in an effort to collect on its prepetition claim against Debtor. For example, it made numerous telephone calls to Debtor demanding payment. (Doc. 46, Ex. 4). This fact alone is sufficient to establish a willful violation of the automatic stay and thereby defeat the pending motion. Moreover, Creditor repossessed the Chevy Tahoe, yet returned it to Debtor upon receipt of $703—establishing that the purpose of its repossession was to extract money from Brodgen, on its prepetition claim, and not to regain possession of the Chevy Tahoe. The plain language of § 362(a)(6) requires only an act to collect a claim, irrespective of whether the act has any effect on property of the estate. Creditor misperceives the breadth of the protection afforded a debtor by the automatic stay.

### 4. Creditor's alternative argument, that any violation of the automatic stay was inadvertent and not willful, fails because the facts concerning its intent are in dispute.

Creditor argues that even if it did violate the automatic stay, its violation was not willful and for that reason there is no claim against it. (Doc. 41, pp. 10-11). Creditor argues that "the

evidence shows that HMI did not have actual knowledge that Brodgen filed bankruptcy and that the automatic stay had been entered." (Doc. 41, p. 10).  This claim is disingenuous.  Creditor took Debtor's deposition and offered it into evidence.  As set forth above, Debtor testified that she told Creditor's employee, Chris, that she filed bankruptcy and he responded that she could not file bankruptcy.  (Brodgen Dep. pp. 29-39).  This testimony alone establishes facts supporting Debtor's claim that Creditor's violation of the automatic stay was willful. For a violation of the automatic stay to be willful, the defendant must know of the automatic stay and intend the act done in violation.  *Jove Engineering, Inc., v. Internal Revenue Service,* 92 F.3d 1539, 1555 (11th Cir. 1996); *Campbell v. Carruthers, (In re Campbell)*, 533 B.R. 448, 453 (Bankr. M.D. Ala. 2016).  There is an abundance of evidence in the record showing that material facts are in dispute on the question of whether any violation of the automatic stay committed by Creditor was willful.

### III. CONCLUSION

Holmes Motors violated the automatic stay when it made repeated demands for payment under its contract, when it repossessed Brodgen's Chevy Tahoe, and when it extracted $703 from Brodgen on its prepetition contract claim.  Holmes' argument, that its lease with Brodgen terminated prior to the bankruptcy filing is contrary to all the evidence in the record.  At a minimum, these are disputed facts precluding summary judgment in Holmes' favor.  In addition, even if one assumes that Holmes is correct in its argument that the lease terminated, it willfully

-11-

violated the automatic stay numerous times when it demanded payment from Brodgen on its prepetition claim. For these reasons, Holmes' motion will be denied by way of a separate order.

Done this 30th day of March, 2018.

United States Bankruptcy Judge

c: Anthony B. Bush, Attorney for Plaintiff
   Stephen M. Cozart, Attorney for Defendant