# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 17-30955-WRS |
| | Chapter 13 |
| STACEY H. BRODGEN, | |
|     Debtor | |
| STACEY H. BRODGEN, | |
|     Plaintiff | Adv. Pro. No. 17-3029-WRS |
| v. | |
| HOLMES MOTORS INC., | |
|     Defendant | |

## MEMORANDUM DECISION

This Adversary Proceeding came before the Court for trial on April 27, 2018. Plaintiff Stacey H. Brodgen was present in court and by counsel Anthony B. Bush. Defendant Holmes Motors, Inc., was present by Jason Johnson, its Chief Operating Officer, and by counsel Stephen M. Cozart. For the reasons set forth below, judgment is entered in favor of the Plaintiff.

## I. FACTS

Plaintiff Stacey H. Brodgen ("Brodgen") is a debtor in bankruptcy and seeks damages from Defendant Holmes Motors Inc. ("Holmes") alleging willful violations of the automatic stay afforded to debtors in bankruptcy. Holmes is in the business of selling cars using the "lease here pay here" business model. The dealership operates three locations in the Southeast, one of which is located in Montgomery, Alabama.

On March 31, 2017, Brodgen filed a petition in bankruptcy in this Court, pursuant to Chapter 13 of the Bankruptcy Code. (17-30955, Doc. 1). At the time she filed bankruptcy, Brodgen owned a 2007 Chevrolet Tahoe, subject to an indebtedness owned by Holmes. Brodgen filed a Chapter 13 Plan, simultaneously with her petition in bankruptcy, proposing to pay the entire indebtedness to Holmes as a secured indebtedness with an interest rate of 4.5%, pursuant to Paragraph 4 of her Plan. (17-30955, Doc. 2). The Court's records show that notice of Brodgen's bankruptcy filing and a copy of her Chapter 13 Plan were mailed to Holmes Motors on April 5, 2017. (17-30955, Docs. 10, 12)(Pl. Ex. 5). The Plan called for a specified monthly payment in the amount of $502.00 to be paid to Holmes.

Holmes filed a motion for summary judgment, alleging that there could be no violation of the automatic stay because the subject vehicle lease had terminated and the subject vehicle was not property of the estate. That motion was denied in a decision dated March 30, 2018. (Docs. 50, 51); *Brodgen v. Holmes Motors, Inc., (In re Brogden)*, 583 B.R. 527 (Bankr. M.D. Ala. 2018). The Court finds that Brodgen owns the 2007 Tahoe, subject to a security interest in favor of Holmes Motors. Holmes Motors did not object to Brodgen's Chapter 13 Plan, which calls for this treatment. To the extent that any argument made by Holmes Motors calls for different treatment (i.e. that its interest is as a lessor) the Court will treat that as a motion to reconsider and deny it.

The parties entered into a contract, denominated "Motor Vehicle Lease Agreement – Closed End," on May 11, 2016. (Pl. Ex. 2). In an unnumbered paragraph on the last page of the contract, it is provided that "[y]ou agree to refrain from listing this Lease or this Vehicle in any current or future bankruptcy filing." When one files bankruptcy, the debtor is required to file

2

Case 17-03029    Doc 57    Filed 08/29/18    Entered 08/29/18 14:00:24    Desc Main
Document    Page 2 of 14

Schedules–which call for the a listing of all vehicles owned or leased. *11 U.S.C. § 521(a)(1)(B)(ii).* Brodgen did in fact list her 2007 Tahoe on Schedule B. (17-30955, Doc. 1). Had Brodgen failed to schedule the Tahoe, and thereby comply with her lease agreement, she would have committed perjury.

Notwithstanding the fact that Holmes had notice of Brogden's bankruptcy filing, its representatives made repeated telephone calls and sent numerous text messages to her subsequent to the bankruptcy filing. Many of the telephone calls were automated telephone calls where a recording would be played when Brodgen answered the line. On other occasions, an individual would call and make a demand for payment. Brodgen's testimony and the evidence admitted proves that, since the filing of her petition, Brodgen received upwards of one-hundred telephone calls—both automatic and manual—and approximately ten text messages from Holmes Motors about her indebtedness.

Brodgen testified that Holmes collection manager, named Chris, telephoned her demanding payment on numerous occasions. She was familiar with Chris from previous contacts and told him that she had filed bankruptcy and that she was making payments under her plan. Brodgen testified that Chris told her that "she could not file bankruptcy" under her lease.

On April 12, 2017, Jason Johnson, Chief Operating Officer for Holmes and one other individual, arrived at Brodgen's place of employment with the intention to repossess the Tahoe. During the attempted repossession, Brodgen approached them and informed them that she was in bankruptcy and demanded that they cease the attempted repossession. Johnson refused to comply, and instead demanded that Brodgen made a $703.00 payment to them. At this point,

Brodgen volunteered to drive to the dealership to resolve the issue. Upon arriving at the dealership, Brodgen's Tahoe was immediately blocked into the dealership by three other vehicles. At this point, the Tahoe was seized in violation of the automatic stay.

Employees of Holmes demanded payment in the amount of $703.00 from Brodgen, refusing to allow her to leave with the Tahoe unless she paid immediately. Brodgen repeatedly informed the Defendant's agents, employees, and attorney, while she was at Holmes Motors place of business on April 12, 2017, that she was in bankruptcy. Holmes was well aware of Brodgen's bankruptcy filing prior to its unlawful repossession, nevertheless, Brodgen was not allowed to leave with her Tahoe unless payment was tendered and was threatened that the police would be called if she attempted to take the Tahoe without paying. After being blocked in for nearly two hours, Brodgen reluctantly made the payment so she could leave the dealership with the Tahoe. Holmes has not returned the $703 to this day.

Four days after the April 12 incident, Brodgen sought medical treatment for symptoms relating to the events surrounding the unlawful repossession and the repeated harassment perpetrated by Holmes. Brodgen testified that she began to see a psychiatrist for unmanageable levels of stress and an inability to sleep. She was prescribed medication to help reduce her stress levels and assist her in sleeping at night. Brogden testified that she lost 10 days of work as result of stress from the constant badgering from Holmes Motors and from the repossession of her vehicle. Brodgen is paid $11.77 per hour. (17-30955, Doc . 3). Brodgen has lost wages of $941.60. The Court finds that Brodgen's testimony is forthright and credible.

## II. LAW

### A. Jurisdiction

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). This is a final order.

### B. Violation of the Automatic Stay

The act of filing a petition in bankruptcy "operates as a stay . . . of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . [and] any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under [Title 11] . . . ." 11 U.S.C. 362(a). A debtor "injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. 362(k)(1).

Brodgen contends that Holmes violated the automatic stay by making repeated demands for payment and by repossessing the 2007 Tahoe. These are clearly acts to exercise control over property of the estate and to collect or recover a claim. It is clear that Holmes violated the automatic stay. Indeed, at trial Holmes conceded that it had in fact violated the automatic stay; however, it contends that any violation was inadvertent and not willful.

Having found that Holmes violated the automatic stay, the Court must next determine whether the violation was willful. A violation of the automatic stay is willful "if the violator (1) knew of the automatic stay and (2) intentionally committed the violative act, regardless of

5

whether the violator specifically intended to violate the stay." *Jove Eng'g. Inc. v. IRS (In re Jove Eng'g. Inc.)*, 92 F.3d 1539, 1555 (11th Cir. 1996); *Cent. Miss. Credit Corp., v. Vaughn*, 555 B.R. 803, 814 (M.D. Ala. 2016); *Credit Nation Lending Serv. v. Nettles*, 489 B.R. 239, 247 (N.D. Ala. 2013). The burden of proving the violation, willfulness, and injury by a preponderance of the evidence, rests on the plaintiff. *In re Parker*, 279 B.R. 596, 602 (Bankr. S.D. Ala. 2002). Holmes argues that it did not know of Brodgen's bankruptcy and for that reason, even if there was a violation of the automatic stay, it was not willful. This argument cannot be taken seriously. Holmes was sent notice of Brodgen's bankruptcy filing by the Court. Moreover, Brodgen told Chris, Holmes' representative, during telephone conversations initiated by him. Brodgen testified, and the Court credits her testimony, that Chris told her that she could not file bankruptcy. Holmes was well aware of Brodgen's bankruptcy filing. The Court concludes that Holmes' violation of the automatic stay was willful.

### C. Actual Damages

When a defendant willfully violates the automatic stay, § 362(k) mandates an award of actual damages. *Parker v. Credit Cent. South (In re Parker)*, 634 Fed. Appx. 770 (11th Cir. 2015); *Lodge v. Kondaur Capital Corp.,* 750 F.3d 1263, 1268 (11th Cir. 2014). The evidence here shows that Brodgen suffered actual damages insofar as the $703 payment wrongfully extracted from her on April 12, 2017, the loss of 10 days wages, and stress incurred as result of Holmes' unlawful actions. The record shows that Brodgen's hourly wage is $11.77 per hour, multiplied by 8 hours per day for 10 days yields damages for lost wages of $941.60.

6

To recover damages for emotional distress under § 362(k), "a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the automatic stay." *Lodge v. Kondaur Capital Corp*., 750 F.3d at 1271. Brodgen's testimony more than adequately supports her claim of damages for emotional distress. Holmes' conduct was aggravated. More than 100 telephone calls and 10 text messages were made in violation of the automatic stay in addition to the April 12, 2017 vehicle repossession. Brodgen has clearly established that she has suffered emotional distress. Given Brodgen's testimony and the close nexus in time between the harassment and her damages, a causal connection is established by a preponderance of the evidence. The Court finds the *Lodge* test for the imposition of emotional distress has been met here.

Having concluded that damages for emotional distress should be awarded, the next question is what is an appropriate measure of damages. Admittedly, emotional distress damages are difficult to quantify, however, they are very real. In a case involving repeated telephone calls and the like, this Court imposed damages of $100.00 per telephone call. *In re Hildreth*, 357 B.R. 650, 654 (Bankr. M.D. Ala. 2006)(Sawyer, B.J.). In a case from the Middle District of Florida, involving similar facts (i.e. repeated telephone calls, after specific notice of the bankruptcy filing) the Court awarded damages of $100 per telephone call. *In re White*, 410 B.R. 322, 326 (Bankr. M.D. Fla. 2009). In a case out of this court involving a vehicle repossession in violation of the automatic stay, which resulted in damages for stress, the Court imposed damages of $2,500, in addition to medical specials and lost wages. *Sanders v. Community Cares, Inc. (In re Sanders)*, No. 12-3066, 2014 WL 2800813, *5 (Bankr. M.D. Ala. Jan. 3, 2014)(Williams, B.J.). The Court

will award damages of $100.00 per telephone call, or $10,000, and $2,500 for the unlawful repossession, in addition to the lost wages specified above, for a total of $12,500 for emotional distress damages.

**D. Costs and Attorneys' Fees**

Costs and attorneys' fees incurred by a plaintiff in prosecuting an automatic stay violation are "actual damages" under 11 U.S.C. § 362(k). It is well established that a successful plaintiff who brings an action for a willful violation of § 362 is entitled to attorney's fees. *Id*., *Mantiply v. Horne (In re Horne)*, 876 F.3d 1076 (11th Cir. 2017). Accordinly, Brodgen is awarded her attorney's fees. The Court will, by way of a separate order, call for Brodgen to submit her claim for reasonable attorney's fees, with an opportunity to Holmes to file objections.

**E. Punitive Damages**

**1. Liability**

Section 362(k) calls for an award of actual damages and attorney's fees when a willful violation of the automatic stay is shown. In addition, "in appropriate circumstances, [the plaintiff] may recover punitive damages." The question here becomes whether the facts here rise to meet the standard of "appropriate circumstances" so as to justify an award of punitive damages.

The Courts have looked to five factors when considering an award of punitive damages: "(1) the nature of the defendant's conduct; (2) the nature and extend of the harm to the plaintiff; (3) the defendant's ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor." *Cent. Mississippi Credit Corp. v. Vaughn*, 555 B.R. 803, 816 (M.D. Ala. 2016); *Parker v. Credit Cent. South, Inc.,* No. 14-CV-311, 2015 WL 1042793, at *9 (M.D. Ala. Mar. 10, 2015). The Court will consider each of the five factors in turn.

### a. The Nature of the Conduct

The Defendant's conduct here was both calculated and knowing. That is, the conduct in question was calculated to impose the maximum stress on the Debtor for the purpose of extracting payment. The excessive telephone calling, the text messaging, the denial of Brodgen's right to file bankruptcy, and the April 12, 2017 vehicle repossession were calculated to place the maximum stress on Brodgen. Holmes did not blunder into its violation of the automatic stay.

Holmes knew its conduct was in violation of the automatic stay. Moreover, it knew that it could be sued for its violation, yet it proceeded, heedless of the consequences. Presumably, it calculated that it likely would not be sued in this case, or that it could minimize damages in the event it did get sued. Holmes was sued for a vehicle repossession in violation of the automatic stay in the Southern District of Alabama. *In re McBride*, 473 B.R. 813 (S.D. Ala. 2012). The District Court in *McBride* affirmed the Bankruptcy Court's finding of a willful violation, however, it reversed on the question of punitive damages, finding that the circumstances were not sufficiently weighty as to call for punitive damages. The actual damages in *McBride* were

9

minimal. Without the clout of punitive damages, Holmes has no economic reason to comply with the automatic stay.

Holmes was sent notice of Brodgen's bankruptcy filing by the Court. Moreover, Brodgen told Holmes' collection manager, Chris, that she had filed bankruptcy. Brodgen again told Holmes' representatives of her bankruptcy filing on April 12, 2017, when it unlawfully repossessed her automobile. Chris told Brodgen that she could not file bankruptcy. Such conduct is outrageous. It is clear that Holmes has set a course of violating the automatic stay. It has done this because it calculates that it is in its best interests, economically, to violate. The chief purpose of punitive damages here is to change that calculus. That is, punitive damages must be of such an amount so as to deter future violations.

### b. The Nature and Extent of Harm to the Plaintiff

Considerable harm was done to the Plaintiff here. Brodgen earns $11.44 per hour and needs her car to get to work so that she can support herself. Without a car, her life could quickly unravel. Broth she and Holmes knew that. The stress resulting from Holmes' repeated telephone calls and the vehicle repossession cased her sufficient stress to seek medical attention and for the a doctor to prescribe medication. Moreover, the stress was sufficiently severe so as to cause her to miss 10 days work. The stress suffered by Brodgen was severe and pervasive.

### c. The Defendant's Ability to Pay

The Defendant is a large business was locations in several states. While it argued that punitive damages should not be imposed, It makes no argument here that it cannot pay an award

of punitive damages. The Court finds here that Defendant Holmes has the ability to pay an award of punitive damages.

### d. The Motives of the Defendant

One may infer the Defendant's motives here from its conduct and the testimony of its COO Justin Johnson. It has made a calculation that it can maximize its income by violating the automatic stay. That it has done so can easily be deduced from the evidence. First, it has attempted to bar its lessees from filing bankruptcy by contractually requiring them to commit perjury. Second, it trains its employees to tell lessees that they cannot file bankruptcy. Indeed, to find otherwise, one would have to conclude that Chris told Brodgen that she could not file bankruptcy on his own. An improbable state of affairs. Third, when lessees do file bankruptcy, Holmes simply ignores the automatic stay. Fourth, in the event it is brought into Court to answer for its conduct, it says what it must to minimize damages. *See*, *McBride*. Holmes persuaded the District Court in *McBride* that its vehicle repossession was an aberration and that the Bankruptcy Court there acted improperly in imposing punitive damages. Subsequent events have shown that the damages awarded in *McBride* were too low–thereby encouraging a state of affairs which resulted in the case at bar. Holmes has a demonstrated pattern of offering false testimony in bankruptcy courts to minimize any award of damages that may be imposed.

### e. Any Provocation by the Debtor

The Courts properly consider whether a debtor has done anything to bait a creditor into violating the automatic stay. There is no evidence of that here. Indeed, Brodgen repeatedly

informed Holmes that she was in bankruptcy and asked that it not violate the automatic stay. This Court has previously held that "[d]ebtors should not file motions with the court to enforce the automatic stay unless they have first made a reasonable attempt to communicate with the creditor to resolve the matter." *In re Briskey*, 258 B.R. 473, 480 (Bankr. M.D. Ala. 2001). Brodgen met her obligation here. Fault for the automatic stay violation here rests solely on the shoulders of Holmes. Considering the five factors together, the Court concluded that this is an appropriate case for the imposition of punitive damages.

### 2. Amount of Punitive Damages

Having determined that punitive damages should be awarded, the Court must next arrive at an appropriate amount. The Court is mindful that it should consider the relationship between actual damages and punitive damages. *Cent. Miss. Credit Corp. v. Vaughn*, 555 B.R. 803 (M.D. Ala. 2016). In *Vaughn*, this Court awarded $50,000 in punitive damages for what it found to be an egregious violation of the automatic stay, garnishing the wages of a debtor, who owed it no money, but had a name similar to that of a borrower. The District Court in *Vaughn* agreed that there had been a violation of the automatic stay and that the violation was sufficiently egregious to call for the imposition of punitive damages, but not sufficient to justify that amount of punitive damages awarded in *Vaughn*. The District Court in *Vaughn* ignored attorney's fees in considering an appropriate award of punitive damages, considering only actual damages–excluding attorneys' fees–holding that a 30 to 1 ratio of actual damages (as calculated) to punitive damages inappropriate in that case.

In this case, the Court has found actual damages of $11,644.60–exclusive of attorney's fees.. If that amount is doubled, punitive damages in the amount of $23,289.60 are awarded. While one might reasonably argue that this amount may be insufficient to deter Holmes in the future, a total damage award of $34,933.80 is nonetheless, not insignificant. Moreover, attorney's fees are yet to be awarded. While Holmes is an automatic stay violation recidivist, and it is the only creditor known to this Court who has attempted to contractually bind lessees to file false schedules with the bankruptcy courts, it is hoped that this award will be a sufficient deterrent to future automatic stay violations. For these reasons, the Court awards punitive damages of $23,289.60.

### F. Other Matters

For the reasons set forth above, the Court will enter judgment in favor of the Brodgen on Count I of her Complaint. In Count II she alleges a wrongful repossession. As the evidence does not support any claim of a wrongful repossession, apart from Holmes violation of the automatic stay, that Court is dismissed. Count III alleges false imprisonment. As no evidence of false imprisonment was offered, Count III is dismissed. Count IV is dismissed for the same reason as Count II.

### III. CONCLUSION

The Court concludes that Brodgen has offered sufficient evidence to prove a violation of the automatic stay. The Court further concludes that the conduct of Holmes here is sufficiently

13

egregious one to support an award of damages for emotional distress and punitive damages. Holmes (1) contractually required lessors to file false schedules with the bankruptcy court; (2) ignored repeated warnings of Brodgen's bankruptcy filing; (3) violated the automatic stay by making an excessive and extreme number of telephone calls; (4) attempted to "gaslight" the Debtor–telling her she could not file bankruptcy; and (5) repossessed her vehicle at her place of employment in plain sight of her co-workers in such as was as to cause humiliation and extreme stress.  The Court awards actual damages in the amount of $703.00, for the amount wrongfully extracted from Brodgen, $941.60 for lost wages, $10,000 for damages for emotional distress for a total of $11,644.60.  The Court further awards punitive damages in the amount of $23,289.20, for a total judgment of $34,933.80.  The Court will enter judgment by way of a separate document.  The Court will award attorney's fees in an amount to be determined after Plaintiff's counsel files an affidavit and the Defendant has had an opportunity to respond.

      Done this 29th  day of August, 2018.

/s/ William R. Sawyer

United States Bankruptcy Judge

c: Anthony B. Bush, Attorney for Plaintiff
   Stephen M. Cozart, Attorney for Defendant

14

Case 17-03029    Doc 57    Filed 08/29/18    Entered 08/29/18 14:00:24    Desc Main
Document      Page 14 of 14